IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE VANGUARD CHESTER FUNDS     :     CIVIL ACTION
LITIGATION                       :     LEAD CASE NO. 22-955
                                 :

**M E M O R A N D U M**

EDUARDO C. ROBRENO, J.                    September 1, 2022


**I.    INTRODUCTION**

Two groups of Plaintiffs--the Liang et al. Plaintiffs, represented by the Rosen Law Firm ("Rosen"), and the Verduce et al. Plaintiffs, represented by Dovel & Luner, Saxton Stump, and LeVan Stapleton Segal Cochran LLC ("Dovel Team")--bring Motions to have their counsel appointed as Interim Lead Class Counsel.[1]

---

[1] Plaintiff Lichtenstein (22-cv-2909) has also moved to establish a Plaintiffs' Committee and appoint his counsel in positions of leadership working "alongside whichever firm the Court may appoint as Interim Lead counsel." Plaintiff Lichtenstein notes that because the filing deadline for the Interim Lead Counsel motions has passed, he moves instead for the appointment of counsel in a leadership position. See Application of Beasley Allen and Golomb Spirt Grunfeld Law Firms for Appointment to Leadership Positions Working Alongside Interim Lead Counsel, ECF No. 45-2.

The Liang et al. and Verduce et al. Plaintiffs have filed responses, asking the Court to dismiss the motion as it was untimely, and there is no demonstrated need for an executive committee or appointment of counsel to leadership positions at this time. Liang & Lucas Resp. to Application of Beasley Allen & Golomb Spirt Grunfeld Law Firms for Appointment to Leadership Positions, ECF No. 46; Verduce et al. Pls.' Opp'n to Pl. Lichtenstein's Motion for Leave to File a Leadership

Rosen's Motion is supported by the named Plaintiffs to two of the other related actions—Plaintiffs Harvey and Richardson. See ECF Nos. 38, 39. Rosen and the Dovel Team strongly oppose each other's appointment as interim lead counsel.

The issue of which attorney or group of attorneys to appoint as interim class counsel is governed by Rule 23(g)(1) of the Federal Rules of Civil Procedure. The rule directs the court to consider counsel's (i) work to identify or investigate the claims; (ii) experience with the particular issue; (iii) knowledge of the particular area of law; and (iv) resources. The court may also consider any other factor that affects counsel's ability to act in the best interests of the putative class. Fed R. Civ. P. 23(g)(1)(B).

Rosen and the Dovel Team are evenly matched across the Rule 23(g)(1)(A) factors. Both firms have reviewed the publicly available facts underlying the claims, and have found and interviewed prospective plaintiffs. Both firms are experienced with complex and class action litigation, and are knowledgeable about breach of fiduciary duty cases. Moreover, both firms work on contingency and have established that they will commit all available resources to pursuing this case in the best interest of the plaintiffs. Rosen, however, has distinguished itself by

---

Application, ECF No. 47. The Court agrees and will deny the Lichtenstein Plaintiffs' Motion (ECF No. 45).

its ability to work cooperatively with other plaintiffs' counsel in this action. Additionally, Rosen Law is local to, and has familiarity with the rules, procedures, and culture of this District. For these reasons, Rosen Law is best able to represent the interests of the class at this stage in the proceedings, and will be appointed Interim Class Counsel.

## II.  BACKGROUND

The Plaintiffs in In re Vanguard allege that the management and trustees of the Vanguard Chester Funds ("the Funds") breached their fiduciary duties to shareholders by altering shareholders' eligibility to purchase the lower-fee, Investor Classes of the Funds, which resulted in a foreseeable taxable event which harmed smaller, individual shareholders, in the Retail Class of the Funds.[2]

In December 2020, Vanguard lowered the required asset minimum of its Institutional Class of the Funds from $100 million to $5 million, to allow smaller retirement funds to purchase shares of its lower-fee Funds. Amended Compl. ¶ 32, ECF No. 13. As a result, these smaller retirement fund investors sold their shares in the Retail Class in order to purchase the

---

[2] The Court draws from the Verduce et al. Plaintiffs' Amended Complaint for a recitation of the facts. The factual allegations and legal claims are substantially similar across all five complaints filed in this District thus far.

lower fee Institutional Class shares. Id. ¶¶ 37-38. Because the
Chester Funds are target-date retirement funds, federal law
requires the fund to distribute capital gains to shareholders
when assets of the funds are sold. Id. ¶ 32, 39. When the
minimum asset level for the Institutional Shares was lowered and
certain smaller institutional investors switched their holdings
from the Retail Class to the Institutional Class, the Fund was
required to sell assets of the Retail Class to redeem shares of
the Institutional Class. Id. ¶ 38. This action resulted in
significant capital gains, which were then passed onto the
shareholders of the Retail Class. Id. ¶ 39. Certain shareholders
(the Plaintiffs in this action) who retained their holdings in
the Retail Funds were required to pay significant capital gains
taxes. Id. ¶ 44.

The Plaintiffs allege that the Funds' managers knew, should
have known, or were grossly negligent in not knowing that their
actions in lowering the assets-under-management threshold for
the Institutional Class would cause a massive shift of
retirement fund holdings from the Retail Class to the
Institutional Class, which in turn would result in taxable
capital gains for a number of individual investors in the Retail
Class. Id. ¶¶ 66-70. Further, the Plaintiffs allege that the
Funds' managers knew, should have known, or were grossly
negligent in not knowing that the Funds could have achieved the

4

same result—increasing the eligibility for the lower-fee Fund
Class—by different means, such as by lowering management fees
for all Fund Classes, by merger of Fund Classes, or taken some
other action. The Plaintiffs also bring common law claims for
unjust enrichment against all Defendants. Id. ¶¶ 78-79.

Additionally, the Plaintiffs bring causes of action under
state statutes. As of the cases consolidated on August 30, 2022,
these state-law claims include violations of the Massachusetts
Consumer Protection Law (Count 5), Illinois Consumer Protection
Law (Count 6), California Unfair Competition Law (Count 7), and
Colorado Consumer Protection Act (Count 5, in Lichtenstein, 22-
cv-2909).

## III. LEGAL STANDARD

Under Rule 23(g)(3), the court has power to appoint interim
counsel to represent a "putative class before determining
whether to certify the action as a class action." Fed. R. Civ.
P. 23(g)(3). In making the interim lead class counsel decision,
the court looks to the same factors as it would when making the
class counsel appointment decision. Milkboy Ctr. City LLC v.
Cincinnati Cas. Co., No. 20-cv-2036, 2020 WL 7633975, at *3-4
(E.D. Pa. Dec. 22, 2020) (citing In re Remicade Antitrust
Litig., No. 17-cv-4326, 2018 WL 514501, at *1 (E.D. Pa. Jan. 23,
2018); see also In re Air Cargo Shipping Servs. Antitrust
Litig., 240 F.R.D. 56, 57 (E.D.N.Y. 2006).

When appointing class counsel, the court must consider:

(i)   the work counsel has done in identifying or
      investigating potential claims in the action;
(ii)  counsel's experience in handling class actions, other
      complex litigation, and the types of claims asserted
      in the action;
(iii) counsel's knowledge of the applicable law; and
(iv)  the resources that counsel will commit to representing
      the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Advisory Committee Notes to the 2003 Amendment of Rule 23, which added subsection (g) explain that, when there are multiple applicants for the position, the court should select the class counsel "best able to represent the interests of the class" in light of all of the Rule 23(g)(1)(A) and (g)(1)(B) factors. "The fact that a given attorney filed the instant action, for example, might not weigh heavily in the decision if that lawyer had not done significant work identifying or investigating claims." 2003 Amendment Notes to Fed. R. Civ. P. 23(g)(2)(B).

When analyzing the first Rule 23(g)(1)(A) factor, the work that counsel has done to identify or investigate potential claims, the court may look to whether proposed counsel had "interview[ed] class members, research[ed] the claims, and engag[ed] experts" to determine the depth of their investigation. See Durso v. Samsung Elecs. Am., Inc., No. 12-5352, 2013 WL 4084640, at *3 (D.N.J. Aug. 7., 2013).

6

In terms of the second and third Rule 23(g)(1)(A) factors concerning knowledge and experience, courts have considered both the general and specific experience of counsel. In Calhoun, for instance, the Oxman firm and BPMC both moved to be appointed interim class counsel for plaintiffs in a putative class action. Both firms had specific experience with the area of law at issue. The Oxman firm had some general experience as well and had worked as defense counsel in several class actions. But, because the BPMC attorneys had more combined experience, had both litigated and settled claims, had worked as lead or co-lead counsel in class actions previously, and had specific experience as class action plaintiffs' counsel, BPMC was chosen as interim counsel. Calhoun v. Invention Submission Corp., No. 18-1022, 2020 WL 5016942, at *3-4 (W.D. Pa. Aug. 25, 2020). Similarly, in Garbaccio, the court looked to the nature and variety of the firms' experience litigating the particular issue--there, church plan litigation under ERISA. The court highlighted that the firm that had "briefed motions to dismiss and for summary judgment," "briefed the statutory and constitutional issues in five appellate courts," and "have argued [the issues] in three appellate courts" was overall more experienced and knowledgeable with the specific issues. Garbaccio v. St. Joseph's Hosp. & Med. Ctr., No. 16-2740, 2017 WL 1196458, at *3 (D.N.J. Mar. 13, 2017).

Counsel's experience in the district in which the complaint
is filed is also relevant to the Rule 23(g)(1)(A)(ii) inquiry.
Allen v. Holiday Universal, 249 F.R.D. 166, 187 (E.D. Pa. 2008);
see also Ohio Pub. Emps. Ret. Sys. v. Meta Platforms, Inc., No.
21-cv-08812, 2022 WL 3571995, at *5 (N.D. Cal. July 26, 2022)
(highlighting the selected counsel's "significant experience
litigating securities class actions, including in this
district"); Zivkovic v. Laura Christy LLC, 329 F.R.D. 61, 77
(S.D.N.Y. 2018) (appointing class counsel in a FLSA action, in
part, on the basis of counsel's "extensive experience litigating
employment law cases in this District, including class
actions").

The experience of proposed local or liaison counsel is
generally given less weight than the experience of "lead"
counsel for a given plaintiff cohort, as these attorneys are
generally utilized for administrative, rather than substantive
purposes. Cf. KBC Asset Mgmt. NV v. McNamara, 78 F. Supp. 3d
599, 607 n.8 (D. Del. 2015) (referring to the liaison counsel
role as largely administrative (quoting Manual for Complex
Litigation (Fourth) § 10.221 (2005)).

Finally, when evaluating the fourth factor under Rule
23(g)(1)(A), the Court may look to the resources already
expended in the case as well as the resources expended by the
firm in other, similar class action cases. For example, in

Calhoun, the court looked both to the time and resources devoted to the action, in addition to the attorneys' track record in prior cases, including the time and expense dedicated to the litigation. 2020 WL 5016942, at *4.

The court may also look to "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). As relevant here, such additional factors may include (1) which plaintiff filed first and (2) whether a plaintiff has support of other plaintiffs.

First, being the first plaintiff to file a complaint may, but does not necessarily, lend weight to one of the Rule 23(g)(1)(A) factors.

Being the first to file can raise an inference that the first-filing party has spent more time and resources investigating the matter. For instance, where one plaintiff's counsel "spent years researching the legislative history [of the statute at issue] and were involved in 'the first wave of [this type of] cases' that they filed . . . well before [the other plaintiff's] Counsel began litigating similar matters," such counsel was entitled to an inference of superior investigation of claims because they had filed first. Garbaccio, 2017 WL 1196458, at *3. When the firm that was first to investigate and first to file also included "additional theories of relief

9

providing a more comprehensive protection for plaintiffs and the class," that firm has set itself apart in terms of the first factor of identifying or investigating potential claims. <u>Id.</u>

But, being the first to file does not create an irrebuttable presumption of a superior investigation. If one plaintiff files first, but another plaintiff and their counsel perform more substantial post-filing investigation and development of the claims, then the later-filing plaintiff may have shown that they are better suited to represent the interests of the class in the interim. <u>Outten v. Wilmington Trust Corp.</u>, 281 F.R.D. 193, 199 (D. Del. 2012). Similarly, if the later firm to file has performed a substantial investigation and been contacted by more potential class representatives at the time of the interim counsel motions, that later-filing firm might be better able to represent the class. <u>Calhoun</u>, 2020 WL 5016942, at *3.

Overall, the court must not place too much weight on the timing of the filing of complaints as to avoid a race to the courthouse. <u>Outten</u>, 281 F.R.D. at 199; <u>Freeman ex rel. Tesla v. Tesla</u>, 324 F.R.D. 73, 87 (D. Del. 2018); <u>cf.</u> <u>In re Cendant Corp. Securities Litig.</u>, 404 F.3d 173, 192 (3d Cir. 2005) (stating that the "race to the courthouse" framework in private securities litigation actions has been statutorily abolished by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v)).

Second, the court may consider any agreements reached by the numerous filing plaintiffs and their counsel under Rule 23(g)(1)(B). The private ordering of plaintiffs and agreements regarding interim lead counsel "may lead to selection of the best lawyers," but, "voluntary agreements among lawyers may create cartel-like groupings that favor some lawyers and disfavor others . . ." In re Third Cir. Task Force on the Selection of Class Counsel, 208 F.R.D. 340, 348 (3d Cir. 2002); see also In re Shop-Vac Mktg. & Sales Practices Litig., No. 12-MD-2380, 2013 WL 183855, at *3 (M.D. Pa. Jan. 17, 2013) (citing In re Genetically Modified Rice Litig., No. 06-md-1811 (E.D. Mo. Apr. 18, 2007) and In re Air Cargo Shipping Servs. Antitrust Litig., 240 F.R.D. 56, 58 (E.D.N.Y. 2006) in explaining the care a court must take when one competing firm at the appointment of interim class counsel stage has more support of the other named plaintiffs than another firm).

## IV.  DISCUSSION

The Court will evaluate each of the Rule 23(g)(1)(A) factors, as well as the additional factors raised by Rosen and the Dovel Team under Rule 23(g)(1)(B).

## A. **The Rule 23(g)(1)(A) Factors**

### 1.   Work to Identify or Investigate Claims

The Dovel Team and Rosen have both alleged that they have substantially investigated the claims pleaded. Both firms have interviewed potential class members. The Dovel Team has "actively corresponded with over 275 class members, from nearly every state." Jacobson Decl. ¶ 5, ECF No. 37-2. Rosen has been contacted by "over 40 potential clients . . . with interest in pursuing this case." Goldberg Decl. ¶ 2, ECF No. 36-2.  The Dovel Team has also "consulted with an expert on fiduciary duties and mutual funds." Verduce et al. Pls.' Mem. of Law in Supp. of their Mot. to Appoint Interim Class Counsel (Verduce et al. Brief), ECF No. 37-1 at 11; Jacobson Decl. ¶ 11. Although Rosen notes that it is unclear what value this expert can provide to the litigation, Pls. Haifan Liang's & Julia Lucas's Opp'n to the Verduce et al. Pls.' Mot. (Liang et al. Reply Brief), ECF No. 41, at 2, the Rosen Firm does not indicate that they have retained an expert, or indicate what type of expert would be more useful to the putative class's claims.

The Dovel Team has specifically stated the investigative and analytical steps it has taken in bringing the case on behalf of the Verduce Plaintiffs. See Jacobson Decl. ¶ 3, ECF No. 37-2. Rosen claims that, because all the information underlying the

12

complaint was publicly available, the Dovel Team's enumeration of its investigative steps is a mere distraction. <u>See</u> Liang et al. Reply Brief at 2, ECF No. 41. The Court generally agrees with Rosen Law on this point--there is no indication that the Dovel Team investigated significantly above and beyond the facts already established by the <u>Wall Street Journal</u>'s reporting.

### 2.  Counsel's Experience with Similar Matters

Both Rosen and the Dovel Team have extensive experience with class action and complex litigation. Rosen primarily represents investors in securities class actions and derivative litigation. The Rosen Law Firm P.A. Biography, ECF No. 36-3, at 1.  The Dovel Team is generally experienced in class actions, unfair competition, and breach of fiduciary duty claims. Dovel & Luner Resume, ECF No. 37-10, at 13. Although both contending counsel have broad experience with complex litigation, neither firm presents substantial, specific experience with direct breach of fiduciary duty claims against a trust, mutual fund, or other similar entity.

The individual lawyers on the briefs for both Rosen and the Dovel Team are experienced. For Rosen, Jacob A. Goldberg, Phillip C. Kim, and Joshua Baker, are described in the firm's biographical information has having experience in securities class actions, shareholder derivative litigation, jury trials,

13

class action defense, fiduciary duty litigation—both derivatively and on behalf of shareholders in the merger and acquisition context, and complex commercial litigation more generally. ECF No. 36-3, at 1-2, 5. Attorneys Goldberg, Baker, and Kim combined have nearly 60 years of experience. ECF No. 36-3, at 1-2, 5. The Dovel Team lists a larger group of attorneys: Jonas Jacobson and Simon Franzini of Dovel & Luner, Peter LeVan, Jr. of LeVan Stapleton Segal Cochran, and Lawrence Stengel of Saxton & Stump. Together, this group has 23 years of experience from the Dovel counsel, ECF No. 37-10, at 10-11, 30 years of experience from Mr. LeVan, LeVan Decl. ¶ 5, ECF No. 37-3, and 28 years of judicial experience plus over 10 years of litigation experience for Mr. Stengel, Hon. Lawrence F. Stengel Biography, ECF No. 37-11.

The Rosen Law firm has an office in this District, in Jenkintown, Pennsylvania. Rosen Law also has experience litigating shareholder derivative actions and other complex matters within this District. ECF No. 36-1, at 9-10. Rosen Law thus has firsthand familiarity with the local rules, procedures, and culture. By contrast, Dovel & Luner is a California-based firm. Moreover, at least three Trustee/Officer Defendants, and Defendant Vanguard itself are domiciled in the state of Pennsylvania. see Verduce et al. Pls.' Compl. ¶¶ 12-13, ECF No. 1. Although the Dovel Team's local counsel does appear

14

experienced in the relevant claims--perhaps more so than the Dovel & Luner lawyers--the role of local counsel is typically not substantive. Accordingly, Rosen has slightly superior experience by way of its familiarity with local rules and procedures.

### 3.  Counsel's Knowledge of the Law

Counsel for both groups of Plaintiffs appear to be knowledgeable of the law surrounding a Fund's fiduciary duties to its shareholders. Nothing in their briefing raised any red flags regarding their understanding of the law. This is not a distinguishing factor.

### 4.  Counsel's Resources

Both firms work on contingency. ECF 36-1, at 10 (Rosen Law); ECF 37-10, at 12 (Dovel Team). Both firms contend that their track records of success provide them with ample resources to lead this case. ECF 36-1, at 11 (Rosen Law); ECF 37-1, at 11 (Dovel Team). Both firms state that they will do what it takes to achieve a favorable result for the plaintiff class. Id.

Counsel's resources are thus indistinguishable, as both firms appear well-suited to litigate vigorously in the best interests of the class.

## B. <u>Other Factors Under Rule 23(g)(1)(B)</u>

### 1. <u>First to File</u>

The Dovel Team and Rosen dispute the significance of being the first to file a complaint. The Dovel Team urges the court to appoint the Team based on this characteristic, <u>see</u> Verduce et al. Pls.' Mem. of Law in Supp. of Their Mot. to Appoint Interim Class Counsel 2-4, ECF No. 37-1, whereas Rosen Law argues that filing first is an "explicitly rejected" part of the appointment calculus, Mem. of Law in Supp. of Mot. to Appoint the Rosen Law Firm, P.A. as Interim Lead Counsel 7, ECF No. 36-1. Rosen's interpretation is slightly more persuasive in this case, as its concerns about allowing a "race to the courthouse" system to dominate are warranted. <u>See</u> <u>Freeman ex rel. Tesla</u>, 324 F.R.D. at 87; <u>In re Cendant Corp. Securities Litig.</u>, 404 F.3d at 192.

Regardless, there was not a substantial difference in time between the filing of the two complaints. The Verduce et al. Plaintiffs filed their original complaint on March 14, 2022. The Liang et al. Plaintiffs filed their complaint on April 29, 2022, less than seven weeks later. The <u>Wall Street Journal</u> article which outlined the major facts and potential claims underlying this litigation was published on January 21, 2022. The timeline is thus closer to contemporaneous filing of the complaints.

As the Dovel Team highlights in Exhibit 3 to its motion to be appointed interim lead counsel, ECF No. 37-7, Rosen Law's complaint includes much of the exact same language as the Dovel Team's complaint. But, all of the complaints in this consolidated actions are relatively similar, as the alleged breach of fiduciary duty by Defendants was fairly straightforward. <u>See</u> <u>Outten</u>, 281 F.R.D. at 199 (noting that the similarities between complaints is not dispositive).

### 2.  <u>Support from Other Plaintiffs and Counsel</u>

Rosen Law has the support of the <u>Harvey</u> and <u>Richardson</u> Plaintiffs. Richardson Notice of Non-Opp'n, ECF No. 38; Harvey Notice of Non-Opp'n, ECF No. 39; Liang et al. Reply Brief, ECF No. 41, at 4-5. The extent of past cooperation between Rosen Law and the Dovel Team is unclear, as counsel dispute the nature, substance, and outcome of prior discussions. <u>Compare</u>, <u>e.g.</u>, ECF No. 40, at 3 (Dovel Team alleging that they reached out to Rosen Law first) <u>with</u> ECF No. 41, at 4 (Rosen Law stating that their firm "initially reached out" to the Dovel Team). But, because the Court will respect the private ordering of plaintiffs where there are no obvious cartel-like red flags, <u>see</u> <u>In re Third Cir.</u> <u>Task Force on the Selection of Class Counsel</u>, 208 F.R.D. at 348, and because cooperation among plaintiffs is critical at this

stage in the litigation, the Court will weigh this factor in favor of Rosen Law.

## V.   CONCLUSION

Counsel for the Verduce et al. and Liang et al. Plaintiffs are both adequate to act as interim lead counsel. Rosen and the Dovel Team have undertaken significant investigations so far, and are generally, but not perfectly, experienced to handle this matter. Counsel appear to have sufficient resources and commitment to lead the early stages of litigation. The Rule 23(g)(1)(A) factors are in equipoise, but Rosen has set itself apart with its local expertise in class action and complex litigation. Rosen is thus "best able to represent the interests of the class" at this stage in the proceedings. The appointment of class counsel and plaintiffs' committees, if needed, will await further development of the case.