# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE VANGUARD CHESTER FUNDS LITIGATION | CIVIL ACTION<br><br>No. 2:22-cv-00955-ER<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY BRIEF IN SUPPORT OF THE MOTION TO DISMISS OF DEFENDANTS THE VANGUARD GROUP, INC., VANGUARD CHESTER FUNDS, MORTIMER J. BUCKLEY, JOHN BENDL, CHRISTINE M. BUCHANAN AND JOHN E. SCHADL**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 3

I.     PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY CANNOT
       PLEAD A NON-SPECULATIVE INJURY........................................................ 3

II.    PLAINTIFFS FAIL TO STATE A CLAIM. ....................................................... 8

CONCLUSION ............................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..................................................................3

*Constitution Party of Pa. v. Aichele*,
    757 F.3d 347 (3d Cir. 2014)........................................................3

*Eshelman v. Agere Systems, Inc.*,
    554 F.3d 426 (3d Cir. 2009).........................................................4

*Finkelman v. Nat'l Football League*,
    810 F.3d 187 (3d Cir. 2016)...............................................2, 3, 4

*Hall v. Hall*,
    753 F. App'x 96 (3d Cir. 2018) ...................................................4

*In re Affiliated Comput. Servs., Inc. S'holders Litig.*,
    2009 WL 296078 (Del. Ch. Feb. 6, 2009) ..................................8

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*,
    903 F.3d 278 (3d Cir. 2018).........................................................3

*Kemmerer v. ICI Americas Inc.*,
    70 F.3d 281 (3d Cir. 1995).......................................................4, 5

*Protas v. Cavanagh*,
    2012 WL 1580969 (Del. Ch. May 4, 2012) ................................8

*Solin v. Domino*,
    2009 WL 536052 (S.D.N.Y. Feb. 25, 2009), *aff'd*, 501 F. App'x 19 (2d Cir. 2012) ............ 8-9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)....................................................................8

*Thorne v. Pep Boys Manny Moe & Jack Inc.*,
    980 F.3d 879 (3d Cir. 2020)........................................................3

Defendants Vanguard, the Trust and the Individual Defendants submit this reply brief in further support of their motion to dismiss the Consolidated Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition only highlights that their purported injury is highly speculative and therefore insufficient to confer Article III standing.  Although Plaintiffs cling to the false premise that payment of capital gains taxes on the 2021 distribution constitutes a cognizable injury, they are unable to rebut the simple fact that a particular Plaintiff is not harmed by the receipt of the 2021 distribution and payment of taxes owed on that amount unless that Plaintiff would have been better off receiving a *different* distribution at some *different* time in the future and paying a *different* amount of capital gains taxes – a hypothetical scenario that is indisputably speculative. And, contrary to Plaintiffs' assertion, that determination goes directly to the *existence* of an injury, not merely the *amount* of damages.  Plaintiffs' efforts to avoid this conclusion are unavailing.

*First*, Plaintiffs' assertion that the payment of capital gains taxes by itself constitutes an injury makes no sense:  their alleged payment of taxes on capital gains distributions they received is not an injury, and treating it as such would result in a windfall in the form of a tax-free distribution.  Plaintiffs' alleged tax payment cannot be viewed in isolation but must instead be considered together with Plaintiffs' receipt of the underlying distribution and their own admission that they would have to pay taxes at some later date when they sold their Fund shares. Importantly, Plaintiffs do not dispute that there is no way to know (*i*) when Plaintiffs would have

---

[1]    Capitalized terms not defined herein have the same meaning as in the Memorandum of Law in Support of the Motion to Dismiss of The Vanguard Group, Inc., Vanguard Chester Funds, Mortimer J. Buckley, John Bendl, Christine M. Buchanan and John E. Schadl.  (Dkt. No. 85-2, "Mem.")

sold their mutual fund shares, (*ii*) how those shares would have performed during that unspecified time period, and (*iii*) how much Plaintiffs would pay in potential future capital gains taxes due on that hypothetical amount.  Under Supreme Court and Third Circuit authority, Plaintiffs lack Article III standing because their purported injury relies on "speculation" and a "chain of contingencies."  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016).

*Second*, Plaintiffs suggest that a distribution of capital gains is not an actual payment of money to investors and, remarkably, that Vanguard does not understand how mutual fund distributions work.  In fact, capital gains distributions *are* payments, as Plaintiffs admit elsewhere in the Opposition and numerous times throughout the Consolidated Complaint. Federal law compels mutual funds to distribute capital gains to shareholders, and a shareholder can choose to receive those distributions in cash or reinvest them.

*Third*, implicitly recognizing the speculative nature of their claims, Plaintiffs ask the Court to assume that, but for the 2021 distribution, they would not have sold their shares until after retirement, their shares would have continued to increase in value until sold, and they would have paid a lower amount of capital gains taxes at the time of the sale.  There is no basis for the Court to make those assumptions.  Nothing requires shareholders of Vanguard Target Retirement Funds to hold their shares through the target date set forth in the Fund's name; stocks and bonds go up and down, as evidenced by the S&P 500's nearly 20% decline in 2022; and the amount of income taxes a particular shareholder pays depends upon many highly specific facts and circumstances that cannot be predicted in advance.  Plaintiffs cannot cure the fundamental deficiencies in the Consolidated Complaint by asking the Court to make assumptions or predictions about future events.

With respect to Plaintiffs' failure to state a claim, Plaintiffs rely heavily on the allegation that the Trust could have pursued some alternative course of conduct, rather than lowering the minimum investment for the Institutional Funds.  Plaintiffs entirely ignore that, under established Delaware law, they cannot state a claim by playing Monday-morning quarterback and second-guessing the business judgment of directors or trustees.  Plaintiffs' conclusory assertions fall far short of the requirement that they plead *facts* indicating that the decision to lower the minimum investment was self-interested, the result of intentional or reckless disregard of shareholders, or an extreme departure from the ordinary standard of care.

The Consolidated Complaint should be dismissed with prejudice.

## **ARGUMENT**

I.    **PLAINTIFFS LACK ARTICLE III STANDING BECAUSE THEY CANNOT PLEAD A NON-SPECULATIVE INJURY.**

Plaintiffs have no substantive response to the Supreme Court and Third Circuit authority making clear that injury – and therefore Article III standing – cannot rest on a "speculative chain of possibilities."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).  As in *Finkelman*, Plaintiffs fail to plead an injury-in-fact because they "rely on a 'chain of contingencies' or 'mere speculation.'"  810 F.3d at 193 (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 364 (3d Cir. 2014)); *see also Thorne v. Pep Boys Manny Moe & Jack Inc.*, 980 F.3d 879, 887 (3d Cir. 2020) (rejecting theory of injury based on "speculation" and "pure conjecture"); *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 287 (3d Cir. 2018) (noting that "Article III *requires* us to ensure that plaintiffs present more than merely conjectural injury") (emphasis in original).  Plaintiffs point out that those cases did not involve

identical facts but say nothing about the principles of law they set forth.[2]  (Mem. 10-11; Opp'n 17-18.)

Plaintiffs are also incorrect that the speculative nature of their injury relates only to an "offset" or uncertainty as to the "amount of damages."  (Opp'n 9, 13-15.)  This argument improperly attempts to shift Plaintiffs' pleading burden to Defendants.  Plaintiffs bear the burden of pleading the existence of an injury, and only if the case proceeds does uncertainty as to amount come into play.  *See Finkelman*, 810 F.3d at 202 & n.92 (noting that while the "amount of damages" is a question of proof, the lack of plausible allegations as to the existence of "any injury at all" is fatal to the standing inquiry); *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 290 (3d Cir. 1995) (holding that the "existence" of injury based on timing of tax liability was "speculative").  Here, Plaintiffs fall far short of their initial burden of pleading a non-speculative injury and establishing Article III standing.

Plaintiffs misstate the Third Circuit's decision in *Kemmerer*, which expressly rejected the plaintiffs' theory of injury based on the "lost benefit of tax deferral" as "speculative."  70 F.3d at 290-91.  (Opp'n 17-18; Mem. 11.)  The Court reasoned that, although it may be advantageous to defer the payment of taxes, "the *existence* of such damages depends in part on what the tax rate will be at any given time and thus is speculative."  *Kemmerer*, 70 F.3d at 290 (emphasis added).  Furthermore, "the tax consequences of the accelerated payments were simply part of a larger picture including investment rates of return."  *Id.* at 291.  And the failure to take into account the risks of remaining invested was "itself a reason for denying damages because a conclusion that

---

[2]     The only Third Circuit case that Plaintiffs cite, *Hall v. Hall*, is not to the contrary, as that case involved a ripeness challenge to a tax liability claim.  753 F. App'x 96, 101 (3d Cir. 2018).  Notably, the *Hall* court cited as "analogous" its decision in *Eshelman v. Agere Systems, Inc.*, which involved tax liability related to "back pay" and thus did not require speculation as to future payments or tax rates.  554 F.3d 426, 442-43 (3d Cir. 2009).

[plaintiffs] were damaged would rest on insupportable speculation."  *Id.*  As in *Kemmerer*, Plaintiffs here improperly focus on tax deferral in isolation, and they ask the Court to ignore the "larger picture," including the inherently speculative nature of predicting the taxes they would pay when they sell their shares at some point in the future, the performance of the Fund over that unspecified time period, and the risks involved in remaining invested in the Fund.  *Id.* at 290-91.

Based on Plaintiffs' claims, any injury would be limited to the difference between (*i*) the distribution received in 2021, less capital gains tax paid, and (*ii*) the potential future value of the distribution had it remained invested in the Fund, less potential future capital gains taxes owed upon the sale of the Fund shares.  (Mem. 9-10.)  Plaintiffs lack Article III standing because that purported injury relies on a speculative chain of contingencies – when Plaintiffs would have sold their Fund shares, how Fund shares would have performed during that unspecified time period, and the amount of potential future capital gains taxes Plaintiffs would pay on that hypothetical amount, which depends on income levels, offsetting capital losses and many other factors. Plaintiffs' arguments to the contrary are without merit.

*First*, Plaintiffs incorrectly assert that their alleged payment of capital gains taxes necessarily means that they suffered an injury.  (Opp'n 9-10.)  That tax payment is "part of a larger picture" and cannot be considered in isolation.  *Kemmerer*, 70 F.3d at 290.  Plaintiffs ignore their receipt of the capital gains distributions, their own admission in the Consolidated Complaint that they would have paid capital gains taxes when they sold their mutual fund shares, and the fact that the proceeds of that hypothetical future sale and the taxes on that amount are uncertain.  (CC ¶¶ 92-94; Mem. 9-10.)   Moreover, as the court stated persuasively in *Solin v. Domino*, treating the tax payment as an injury would result in a "windfall" to Plaintiffs because

the net result would be a tax-free capital gains distribution.  2009 WL 536052, at *3 (S.D.N.Y. Feb. 25, 2009), *aff'd*, 501 F. App'x 19 (2d Cir. 2012).

*Second*, Plaintiffs falsely claim that Defendants "misrepresent how mutual fund capital gains work" but identify no misrepresentation.  (Opp'n 10.)  To the contrary, it is Plaintiffs who incorrectly suggest that a capital gains distribution is not an actual payment of money and that the "only thing" the shareholder receives is an "increase in cost basis."  (*Id.*)  That suggestion is contrary to Plaintiffs' own allegations in the Consolidated Complaint and appears to be based on the false premise that if a distribution is reinvested it was never received in the first place.  (Opp'n 10 n.5; CC ¶¶ 59, 65, 84, 147-59.)  Of course, shareholders have a choice of whether to receive a distribution in cash or reinvest it in the Fund.  Whichever option Plaintiffs chose, their purported injury is equally speculative because the existence of an injury depends on unknowable future investment performance and future tax payments.[3]

*Third*, Plaintiffs ask the Court to assume that they would not sell their Fund shares until after retirement, at which point they "*would most likely* have lower taxable incomes" and "lower capital gains and income tax rates," that they "*may not* end up paying any capital gains taxes" or "*might not* sell their holdings at all."  (Opp'n 11 (emphasis added).)  Plaintiffs' argument highlights the speculation and guesswork underlying their claim of injury.  They likewise acknowledge that whether they are "better off" depends on the rate of return of the Fund shares.  (Opp'n 13 n.11.)

---

[3]   Plaintiffs describe a hypothetical investor who owns $100 worth of Fund shares, receives and automatically reinvests a capital gains distribution of $10, and has a corresponding $10 increase in "cost basis."  (Opp'n 10 & n.5.)  That increase in "cost basis" makes it more likely that the investor will pay lower taxes in the future, and whether that benefit ultimately outweighs the 2021 tax payment depends on the many unknown future events and circumstances that impact tax payments.

Although Plaintiffs attempt to present their predictions of future events as "plausible" inferences rather than speculation, they identify no factual allegations supporting those inferences.  Plaintiffs point to nothing that requires shareholders of Vanguard Target Retirement Funds to hold their shares through the target date set forth in the Fund's name.  Nor could they: investors buy and sell shares in the Funds for all sorts of reasons, planned and unplanned.

With respect to the future performance of the Funds, notwithstanding Plaintiffs' misleading citation to the Vanguard website, it is common knowledge that investments involve risk, and the future performance of stocks and bonds cannot be predicted in advance.[4]  (Opp'n 12 & n.9.)  The stock market does not move in a straight line; in 2022, for example, the S&P 500 index fell nearly 20%.

The taxes that Plaintiffs would have to pay on any hypothetical future distribution is just as uncertain, if not more so, and that uncertainty does not depend on whether "Congress raises the capital gains tax rate." (Opp'n 13.)  Even under the current tax code, Plaintiffs acknowledge that the amount of potential future capital gains taxes they would pay depends on their "incomes" and "marginal tax brackets" at the time of sale (CC ¶ 93), among many other factors, including the amount – or lack – of offsetting capital losses.  The Consolidated Complaint itself highlights the variability in tax rates:  Plaintiff Bradford received a distribution of $40,000 and paid $11,000 in taxes, whereas Plaintiff Brigham received a larger distribution, $50,000, but paid

---

[4]    To illustrate the concept that risk can be mitigated through diversification and long-term investment, the Vanguard website provides – "[b]ased on past history" – the percentage of one-, ten- and twenty-year historical time periods over which the stock market as a whole had a negative performance, and it includes an important warning that Plaintiffs omit: "All investing is subject to risk . . . .  Past performance is no guarantee of future results. Diversification does not ensure a profit or protect against a loss." (Opp'n 12 (citing https://investor.vanguard.com/investor-resources-education/how-to-invest/risk-reward-compounding).)

only $8,000 in taxes; Plaintiffs Chaussee and the Day Trust both received $80,000 but paid different amounts in taxes, $22,400 and $18,000, respectively.  (CC ¶¶ 151, 153, 155-57.)

Nor does Plaintiffs' reference to the "time value of money" make their purported injury any less speculative.  (Opp'n 11-12.)  Notably, Plaintiffs selectively apply that discount only to their future tax *payment* and not to the future *income* from the sale of their shares, and they rely on the unsupported assumption that the amount of their future tax payment would be the same as their 2021 tax payment.  (*Id.*)

At bottom, the Opposition simply reinforces that whether Plaintiffs would have been better or worse off in the absence of the 2021 distribution – *i.e.*, whether they suffered an injury – depends on a number of inherently unknowable future events and circumstances, and Plaintiffs therefore fail to plead an injury-in-fact that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," as required to confer Article III standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  (Mem. 8-12.)

## II.    PLAINTIFFS FAIL TO STATE A CLAIM.

Plaintiffs' response to their failure to state a claim relies almost entirely on the repeated assertion that, instead of lowering the minimum investment for the Institutional Funds, the Trust could have, or should have, followed some "alternative" course of action that supposedly was available to it.  (Opp'n 3, 7, 25-26, 28, 32, 35, 36, 42.)  Delaware law is clear, however, that Plaintiffs cannot state a claim by second-guessing the business judgment of the trustees. "A complaint which alleges merely that some course of action other than that pursued by the Board of Directors would have been more advantageous gives rise to no cognizable cause of action."  *In re Affiliated Comput. Servs., Inc. S'holders Litig.*, 2009 WL 296078, at *10 n.46 (quotation omitted); *see also Protas v. Cavanagh*, 2012 WL 1580969, at *11 (Del. Ch. May 4, 2012) (dismissing claims against trustees where plaintiffs "merely allege[d] that an alternative

8

course of action . . . would have been more beneficial").  Plaintiffs have no answer to this fundamental principle of Delaware law, and so they simply ignore it.[5]

Nor can Plaintiffs avoid this core principle of Delaware law by relying on the false choice that, if the Trust did not choose Plaintiffs' preferred option, it must have breached either its duty of care or duty of loyalty.[6]  (Opp'n 25-26.)  The decision to lower the minimum investment for the Institutional Funds does not imply a failure to consider other available options, if any, or a lack of good faith or self-dealing.  Plaintiffs are unable to point to any factual allegations in the Consolidated Complaint regarding the process through which that decision was made, much less facts showing that the decision – which allowed *more investors* to take advantage of the Institutional Funds' *lower costs* – was "self-interested," "an intentional dereliction of duty," or "reckless indifference to or a deliberate disregard of the whole body of stockholders."  (Mem. 20.)  Plaintiffs also fail to cite any facts showing that the decision was "an extreme departure from the ordinary standard of care," "unjust," or "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," as required for Plaintiffs' other common law claims.

---

[5]   Plaintiffs also fail to plead facts supporting their assertion that the purported "alternatives" were feasible at the time, much less "readily available."  (Opp'n 25.)  For example, although Plaintiffs allege that Fidelity Investments lowered its investment minimum "by simply restructuring its share classes" and assert that "Vanguard could easily have done the same," Plaintiffs then contradict that assertion by acknowledging that the Retail Funds and Institutional Funds "were *separate funds* within the Trust *as opposed to share classes* within the same fund."  (CC ¶¶ 14, 34, 99-101 (emphasis added).)  Plaintiffs make the same contradictory assertions in the Opposition.  (Opp'n 7, 25.)

[6]   Plaintiffs abandon their breach of fiduciary duty claim against the Trust (Opp'n 24 n.13) and their breach of the covenant of good faith and fair dealing claim against the Individual Defendants. (Opp'n 34 n.16.)  With respect to Vanguard, Plaintiffs rely on statements on the Vanguard.com website that "Vanguard" is a fiduciary (Opp'n 22-23), but the cited document does not state that Vanguard Group, Inc. owes fiduciary duties to Fund shareholders; to the contrary, as Plaintiffs acknowledge, it specifies that "[t]he Board of Trustees [] of each Vanguard fund is responsible for fiduciary oversight of the fund."  (CC ¶ 113.)

(Mem. 16-18.)  Nothing in the Consolidated Complaint comes anywhere close to meeting those standards.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Court should dismiss the Consolidated Complaint with prejudice.

Respectfully submitted,

Dated:  April 10, 2023

*/s/ Samuel W. Silver*

Samuel W. Silver (Pa. ID. 56596)
Layal Issa Ramirez (Pa. ID. 329214)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 751-2309
*ssilver@schnader.com*
*lramirez@schnader.com*

Maeve L. O'Connor (admitted *pro hac vice*)
Elliot Greenfield (admitted *pro hac vice*)
Brandon Fetzer (admitted *pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000
*mloconnor@debevoise.com*
*egreenfield@debevoise.com*
*bfetzer@debevoise.com*

*Attorneys for Defendants The Vanguard Group, Inc., Vanguard Chester Funds, Mortimer J. Buckley, John Bendl, Christine M. Buchanan and John E. Schadl*