# EXHIBIT 3

```
 1                   COUUNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF PENNSYLVANIA

 3
                                          Case No. 2:22-cv-00955-JFM
 4     IN RE:  VANGUARD CHESTER FUNDS
       LITIGATION
 5
                                          Philadelphia, Pennsylvania
                                          March 11, 2025
 6                                        10:05 a.m.

 7


 8
                    TRANSCRIPT OF SETTLEMENT HEARING
 9              BEFORE THE HONORABLE JOHN F. MURPHY
                 UNITED STATES DISTRICT COURT JUDGE
10


11    APPEARANCES:
      For the Plaintiffs:           Phillip C. Kim, Esq.
12                                  The Rosen Law Firm, Pa
                                    275 Madison Avenue 34th Fl.
13                                  New York, NY 10016

14                                  Joshua E. Baker, Esq.
                                    The Rosen Law Firm PA
15                                  101 Greenwood Avenue
                                    SUITE 440
16                                  Jenkintown, PA 19046

17    For the Defendants:           Maeve O'Connor, Esq.
      (Vanguard Chester Funds)      Amy C. Zimmerman, Esq.
18                                  Debevoise & Plimpton, LLP
                                    66 Hudson Boulevard
19                                  New York, NY 10001

20                                  Elliot Greenfield, Esq.
                                    Debevoise & Plimpton, LLP
21                                  919 Third Ave.
                                    New York, NY 10022
22
                                    Samuel W. Silver, Esq.
23                                  Welsh & Recker, P.C.
                                    306 Walnut Street
24                                  Philadelphia, PA 19106

25
```

1  if that's correct or not?

2          MR. KIM:  I don't know.

3          THE COURT:  I'll find out in a second.

4          MR. KIM:  I don't know.  I guess we'll find out.  But
5  I think, you know, we have no reason to suspect otherwise, I
6  mean, based on the fact that folks have been acting in good
7  faith.  We had no indication, no suspicion, that there was
8  something like this around the corner.

9          You know, it is an unusual circumstance, but I think
10 as we note in our papers, I think sort of the timing of how
11 everything came down in connection with this deal being
12 announced the day before Inauguration Day, I think people just
13 wanted to get something on the board on the SEC, but I can't
14 speak for them.

15         But I can only speak for myself being a Plaintiff's
16 attorney doing this since, you know, almost 20 years that this
17 is a good settlement.

18         I mean, in every situation where you might have a
19 subsequent regulator recovery, you can always look back in
20 hindsight and say, well, you know, maybe the settlement would
21 have been different if I had known about this.

22         THE COURT:  When you got to look at the SEC order,
23 was that the first time you learned about the sort of the
24 $40,000,000 potential?

25         MR. KIM:  That is correct.  When we read that press

1   release, it's the first time we ever learned about it.

2              THE COURT: Did you consider that to be very bad

3   news?

4              MR. KIM: I thought it was unusual, but I felt

5   comfortable that given the fact that this was a case that we've

6   litigated by ourselves, facts that we developed by ourselves,

7   facts that we marshalled by ourselves, experts that we hired by

8   ourselves, and were able to obtain this settlement, which I

9   believe is an excellent settlement, I felt confident that we

10  would get the settlement approved even under these

11  circumstances.

12             So I think, you know, this is not an agreement that

13  everyone had bargained for. I mean, the SEC Fair Fund, the

14  purpose of the Fair Fund is to compensate investors to make

15  sure they get their money back.

16             The SEC could have easily objected to this and came

17  to the same conclusion Your Honor has or get -- not push it,

18  but same feeling that the -- Your Honor would have is, well, if

19  I reject the settlement, the investors will get more money, but

20  they did not object.

21             THE COURT: Keep going.

22             MR. KIM: The other point, Your Honor, I think you

23  know I'll turn to the plan of allocation, this idea of damages.

24  I think when we presented the damages number, that was the best

25  case scenario.

1    blow up our settlement is clearly not what was intended.

2              And I think the Court has in the record, the SEC

3    settlement.  But in paragraphs 44 and 45 of that settlement, it

4    clearly references Vanguard's entitlement to an offset.

5              Paragraph 44 says according to these settlements,

6    Vanguard is titled to an offset to the 135,000,000 by the

7    amount of the 40,000,000 for the settlement that's pending.

8              And then, it says the total amount in paragraph 45 of

9    remediation inclusive of these offsets is 92.91 million.  So

10   the way Mr. Hughes is reading this, it's like that SEC offset

11   language wouldn't even exist that's here in the settlement.

12             THE COURT:  You lost me, sorry.

13             MS. O'CONNOR:  Well, so let me --

14             THE COURT:  Is there something, like do you agree

15   with the, not to be overly simple minded about it, but do you

16   agree with the basic logic that if I reject the settlement,

17   that the class will get more money?

18             MS. O'CONNOR:  Look, Your Honor, I can't disagree

19   that if you reject this settlement, that's the way the math

20   would work.

21             THE COURT:  Okay.

22             MS. O'CONNOR:  What I'm taking issue with is the

23   notion that the SEC was ever intended to be used as a reason to

24   reject this settlement when the SEC settlement clearly

25   contemplates that Vanguard would be entitled to an offset and

1    that this settlement would be considered on its own merits, not

2    considered on the basis of being used in order to, you know,

3    ignore the offset language in the SEC settlement and push to a

4    situation where Vanguard has to pay this money into the SEC.

5                I think it makes a portion of that SEC settlement

6    language referencing Vanguard's offset meaningless.  And that's

7    clearly not what the SEC intended.  I think the language, you

8    know, could have been written differently for sure, but the

9    clear intent is a settlement has been reached in the class

10   action.  We're going to let Vanguard offset that, assuming that

11   settlement goes through.

12               And if it doesn't, we want to be sure the money gets

13   paid secondarily.  And so, we will take steps to ensure that

14   money gets paid in case this settlement goes off the rails, but

15   Mr. Hughes is trying to take this settlement with the SEC and

16   make it the basis for rejecting the first settlement, which is

17   never what was intended with the regulators and Vanguard.

18               THE COURT:  Does that intent matter?

19               MS. O'CONNOR:  I think it does matter, Your Honor,

20   because I think that the question is what was meant to happen

21   here?  What's the fair result?  What's the equitable result?

22   What's the result that creates incentives that make sense in

23   the future?

24               THE COURT:  Well, that's the question.  So I was

25   talking about with Plaintiff's counsel and with Mr. Hughes, as

1   this was intended to work.  I think that -- I can't stand here
2   and say I would have written this exactly this way myself, but
3   I think that the SEC and regulators want certainty in a
4   settlement.
5           They want to give Vanguard and us that.  Mr. Hughes
6   feels it offsets -- fundamentally I think shouldn't be
7   permitted.  I don't think there's really a way to parse that
8   unless you require the regulators to make their settlement an
9   uncertainty that depends on what happens in a proceeding over
10  which they have no control.  I don't think that makes sense.  I
11  don't think that's good policy either.
12          I just want to see if there was one or two other
13  things I wanted to address.  Just, we --
14          THE COURT:  Well, I'm curious about the question of
15  the extent to which this case, the work of the Plaintiffs here
16  informed or supported the SEC's investigation that led to this
17  order?
18          MS. O'CONNOR:  So we did not negotiate the SEC
19  settlement.  My firm did not.
20          THE COURT:  But that's -- if you represent Vanguard,
21  so you know what Vanguard knows.
22          MS. O'CONNOR:  Yes, here's what I can tell Your Honor
23  that at the time when the class action settlement was
24  negotiated, the parties in the regulatory matters were not
25  close to a deal.  That was not in the offing.

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Chris Hwang*
_____          March 13, 2025

Chris Hwang                    Date

Court Reporter