UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------------------------X
:
:
:
IN RE: VANGUARD CHESTER         :
FUNDS LITIGATION                : No. 2:22-cv-955-JFM
:
:
:
:
:
---------------------------------------------------------X

**DECLARATION OF ADAM SCHULMAN
IN SUPPORT OF OBJECTION OF JOHN HUGHES TO THE
<u>PROPOSED CLASS ACTION SETTLEMENT</u>**

I, Adam Schulman, declare as follows:

1.  I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2.  I am a Senior Attorney with the 501(c)(3) non-profit public-interest law firm Hamilton Lincoln Law Institute ("HLLI") and its Center for Class Action Fairness ("CCAF").

### Center for Class Action Fairness

3.  CCAF, founded in 2009 by Theodore Frank, advocates on behalf of class members against unfair class action procedures and settlements. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") and became a division within their law and litigation unit. In January 2019, CCAF became part of HLLI, a new 501(c)(3) non-profit public-interest law firm that Melissa Holyoak and Theodore Frank founded in 2018. Ms. Holyoak left HLLI in 2020 to become the Solicitor General of Utah, and has since been appointed by President Biden as an FTC Commissioner.

4.  I joined CCAF as an attorney in 2011 and have been with the organization continuously for the last 14 years. Throughout that time, one of my responsibilities has been to review pending class-action settlements, particularly those in federal court, to look for instances in which Rule 23 procedures are being used to the detriment of absent class members.

5.  Often these unfair procedures and settlements take the form of class counsel employing strategies to benefit themselves at the expense of the class. Over its decade and a half of operation, CCAF has "develop[ed] the expertise to spot problematic settlement provisions and attorneys' fees." Elizabeth Chamblee Burch, *Publicly Funded Objectors*, 19 THEORETICAL INQUIRIES IN LAW 47, 57 & n.37 (2018).

6.  CCAF has recovered over 200 million dollars for class members and received national acclaim for its work. *See, e.g., McDonough v. Toys "R" Us, Inc.*, 80 F. Supp. 3d 626 (E.D. Pa. 2015) (approving amended settlement that enhanced class recovery by about $15 million); Roger Parloff, *Should Plaintiffs Lawyers Get 94% of a Class Action Settlement?*, FORTUNE, Dec.

15, 2015 ("the nation's most relentless warrior against class-action fee abuse"); The Editorial Board, *The Anthem Class-Action Con*, WALL ST. J., Feb. 11, 2018 (opining "[t]he U.S. could use more Ted Franks" while covering CCAF's role in exposing "legal looting" in the Anthem data breach MDL). A court in a case where we did not appear gratuitously praised CCAF. *Shah v. Zimmer Biomet Holdings*, 2020 WL 5627171, 2020 U.S. Dist. LEXIS 171925 (N.D. Ind. Sept. 18, 2020).

   7. CCAF has been successful, winning reversal or remand in over thirty federal class action appeals decided to date in courts of appeals and the Supreme Court. *E.g., Frank v. Gaos*, 139 S. Ct. 1041 (2019); *Alcarez v. Akorn, Inc.*, 99 F.4th 368 (7th Cir. 2024); *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Practices & Prods. Liab. Litig.*, 2024 WL 3065907 (11th Cir. Jun. 20, 2024) (*per curiam*); *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023); *In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797 (7th Cir. 2023); *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243 (11th Cir. 2023); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022); *In re Stericycle Sec. Litig.*, 35 F.4th 555 (7th Cir. 2022); *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021); *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021); *Berni v. Barilla S.P.A*, 964 F.3d 141 (2d Cir. 2020); *Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020); *In re Lithium Ion Batteries Antitrust Litig.*, 777 Fed. Appx. 221 (9th Cir. 2019) (unpublished); *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316 (3d Cir. 2019); *In re EasySaver Rewards Litig.*, 906 F.3d 747 (9th Cir. 2018); *Pearson v. Target Corp.*, 893 F.3d 980 (7th Cir. 2018); *In re Subway Footlong Mktg. Litig.*, 869 F.3d 551 (7th Cir. 2017); *In re Target Corp. Customer Data Sec. Breach Litig.*, 847 F.3d 608 (8th Cir. 2017); *In re Walgreen Co. Stockholder Litig.*, 832 F.3d 718 (7th Cir. 2016); *In re EasySaver Rewards Litig.*, 599 Fed. Appx. 274 (9th Cir. 2015) (unpublished); *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060 (8th Cir. 2015); *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014); *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014); *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560 (9th Cir. 2014) (unpublished); *In re Dry Max Pampers Litig.*, 724 F.3d 713 (6th Cir. 2013); *In re HP Inkjet Printer Litigation*, 716 F.3d 1173 (9th Cir. 2013); *In re Baby Products Antitrust Litigation*, 708 F.3d 163

(3d Cir. 2013); *Dewey v. Volkswagen*, 681 F.3d 170 (3d Cir. 2012); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). While, like most experienced litigators, we have not won every appeal we have litigated, CCAF has won the majority of them, even though appellants in private civil cases typically prevail less than 15% of the time.

8. In the Third Circuit in particular, CCAF has won each of its four appeals. *Dewey*; *Baby Products*; *Google Cookie*; *Wawa.*

9. We frequently represent law professors in court, and have also been appointed amicus in district court and appellate court proceedings where there was no adversary presentation. *E.g., Arkansas Teacher Ret. Sys. v. State St. Corp.*, 25 F.3d 55 (1st Cir. 2022) (affirming district court with CCAF defending against an *ex parte* appeal); *McKnight v. Uber Techs.*, No. 14-05615-JST, Dkt. 256 (N.D. Cal. Mar. 21, 2022) (requesting CCAF's amicus participation regarding a novel issue of class action procedure).

10. Class attorneys occasionally try to tar CCAF as "professional objectors," and then cite court opinions criticizing for-profit attorneys who threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of attorneys' fees. But this is not the non-profit CCAF's *modus operandi*, so the opinions class counsel rely upon to smear CCAF are inapposite. *See* D. Brooks Smith, *Class Action and Aggregate Litigation: A Comparative International Analysis,* 124 PENN ST. L. REV. 303, 321-30 (2020) (distinguishing between professional objectors and objecting public interest groups); Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements, and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

11. HLLI pays me on a salary basis that does not vary with the result in any case. HLLI and CCAF attorneys do not receive a contingent bonus based on success in any case, a structure

that would be contrary to I.R.S. restrictions. Neither I, nor HLLI are receiving any compensation from Objector John Hughes for this testimony.

12. The difference between a for-profit "professional objector" and a public-interest objector like CCAF is a material one. As the federal rules are currently set up, "professional objectors" have an incentive to file objections regardless of the merits of the settlement or the objection. In contrast, a public-interest objector such as HLLI must triage dozens of requests for *pro bono* representation and dozens of unfair class action settlements, loses money on every losing objection (and most winning objections) brought, can only raise charitable donations necessary to remain afloat by demonstrating success, and has no interest in wasting limited resources and time on a "baseless objection." CCAF objects to only a small fraction of the number of unfair class action settlements or excessive fee requests it sees.

13. CCAF feels strongly enough about the problem of bad-faith objectors profiting at the expense of the class through extortionate means that it successfully initiated litigation to require such objectors to disgorge their ill-gotten gains to the class. *See Pearson v. Target Corp.*, 968 F.3d 827 (7th Cir. 2020); *see generally* Jacob Gershman, *Lawsuits Allege Objector Blackmail in Class Action Litigation*, WALL ST. J., Dec. 7, 2016.

14. While we are often accused of being "ideological objectors," the ideology of CCAF's objections is merely the correct application of Rule 23 to ensure the fair treatment of class members. Likewise, I have often seen class counsel assert that we oppose all class actions and are seeking to end them, not improve them. The accusation—aside from being utterly irrelevant to the legal merits of any particular objection—has no basis in reality. We have been writing and speaking about class actions publicly for over a decade, including in testimony before state and federal legislative subcommittees, and have never asked for an end to the class-action device, just proposed reforms for ending the abuse of class actions and class-action settlements. That we oppose class-action abuse no more means that we oppose class actions than someone who opposes food poisoning opposes food.

15. CCAF's founder and direct of litigation, Theodore Frank has frequently confirmed his support for the principles behind class actions in declarations under oath, interviews, essays, and public speeches, including a January 2014 presentation in New York that was broadcast nationally on C-SPAN and in Supreme Court briefing in *Frank v. Gaos*, No. 17-961. On multiple occasions, successful objections brought by CCAF resulted in new class-action settlements where the defendants pay substantially more money to the plaintiff class without CCAF objecting to the revised settlement. And he was the putative class representative in a federal class action, represented by a prominent plaintiffs' firm. *Frank v. BMOCorp., Inc.*, No. 4:17-cv-870 (E.D. Mo.).

### The Proposed *Vanguard* Settlement

16. HLLI was not tracking this litigation, nor did my colleagues or I independently come across the proposed settlement in this case. On or about March 3, 2025, my colleague Mr. Frank received an unexpected email from Mr. Hughes. We had not previously met Mr. Hughes and he was not known to us. Mr. Hughes informed my colleague that he had filed an objection in this settlement, and requested an opportunity to confer with us about his objection and the pending settlement.

17. The following week, Mr. Hughes and I engaged in a telephone conference to discuss this case, the proposed settlement, and Mr. Hughes's objection. Separately, I reviewed several filings that Mr. Hughes sent me, including his objection (Dkt. 161), plaintiffs' response to that objection (Dkt. 170), and Mr. Hughes's supplemental objection (Dkt. 173).

18. This settlement is extremely abnormal, in a way that, contrary to the purpose of Rule 23, harms the very class it is supposed to benefit. *See, e.g. Baby Prods.*, 708 F.3d at 179 (class members should be the "foremost beneficiaries of the settlement").

19. The settlement here appears more unfair to class members than the usual objectionable settlement that CCAF confronts, and more unfair than all four settlements/fee awards that CCAF has succeeded in reversing at the Third Circuit. In those cases, proposed settlements limited class members to a smaller share of the settlement proceeds than they were entitled (*Baby Products*; *Wawa*), or they froze out segments (*Dewey*) or the entire class (*Google Cookie*) from any

compensatory recovery at all. Here, the settlement proposes to provide the class nothing that it hasn't already obtained through the parallel state enforcement actions ***and*** it proposes to use a portion that existing recovery to pay about $15 million to the class attorneys who have recovered nothing additional for class members. This is a "negative recovery" settlement and it is categorically barred not only by Rules 23(a)(4), (e)(2), (g)(4), but also by the Class Action Fairness Act, 28 U.S.C. § 1713, because there is no offsetting injunctive relief that could justify the loss of money by class members.

20. § 1713 arose from the infamous *Bank of Boston* case in which a settlement debited class members' bank accounts to pay attorneys' fees in excess of settlement recovery. *See Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348 (7th Cir. 1996) (Easterbrook, J., dissenting from the denial of rehearing). My understanding is that the plaintiffs now argue that the benefit lies in the fact that the settlement distribution will occur earlier than a fair fund distribution. Not only is that argument factually speculative (it depends on any appeals in this litigation), it's the same theory of value that the settlement-approving state court accepted in *Bank of Boston*, and which prompted the passage of CAFA's prohibition. *Kamilewicz v. Bank of Boston Corp.*, 1995 WL 758422, 1995 U.S. Dist. LEXIS 18973, *5-6 (N.D. Ill. Dec. 15, 1995) (the class members "allege that the true economic benefit to the plaintiff class in the *Hoffman* litigation was only the interest payment; that is, the value of receiving the escrow surplus now rather than receiving it when the mortgage terminated. However, they allege that the *Hoffman* class counsel defendants misled the Alabama court by convincing it that the economic benefit to the plaintiff class was the entire escrow surplus, which they allegedly did in order to increase the award of attorneys' fees. The *Hoffman* class counsel defendants were allegedly awarded fees as a percentage of that surplus, despite the fact that this money had always belonged to the plaintiff class.")

21. In all my years with CCAF, during which I have reviewed hundreds of securities settlements alone, I have never seen any such settlement that proposed to make the putative class unambiguously worse off by imposing a pecuniary loss on them.

-7-

    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on March 26, 2025 in Alexandria, Virginia.

Adam Schulman